UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------X
HSA RESIDENTIAL MORTGAGE SERVICES
OF TEXAS,

                    Plaintiff,          MEMORANDUM AND ORDER
                                        05-CV-3185(JS)(WDW)
        -against-

STATE BANK OF LONG ISLAND,

                    Defendant.
-----------------------------X
Appearances:
For Plaintiff:      Andrew Gardner, Esq.
                    Howard W. Goldstein, Esq.
                    Fabio Arcila, Jr., Esq.
                    Fried, Frank, Harris, Shriver & Jacobson LLP
                    One New York Plaza
                    New York, New York 10004-1980

For Defendant:      Frederick T. Davis, Esq.
                    Debevoise & Plimpton LLP
                    919 Third Avenue
                    New York, New York 10022-3916

                    Brian H. Polovoy, Esq.
                    Alan S. Rabinowitz, Esq.
                    Elizabeth R. Weiss, Esq.
                    Brendan N. Snodgrass, Esq.
                    Shearman & Sterling LLP
                    599 Lexington Avenue
                    New York, New York 10022-6069

SEYBERT, District Judge:

## **INTRODUCTION**

        Pending before the Court is Defendant's motion for a

judgment as a matter of law or in the alternative for a new trial.

For the reasons below, this Court DENIES both Defendant's motions

for a judgment as a matter of law and a new trial.

## BACKGROUND

On January 9, 2006, a jury trial began in this complex mortgage fraud matter. Three weeks later, the jury rendered a verdict in favor of Plaintiff, HSA Residential Mortgage Services of Texas ("Plaintiff"). The jury found that the Defendant, State Bank of Long Island ("Defendant"), had aided and abetted a fraud committed by Island Mortgage Network, Inc. ("Island Mortgage"). State Bank was the bank at which Island Mortgage kept over forty accounts for its mortgage fraud scheme. Through these accounts, Island Mortgage had defrauded a number of mortgage warehouse lenders, including Plaintiff, out of millions of dollars. The jury awarded Plaintiff $43,856,746.03 – the amount of Plaintiff's out-of-pocket losses.

On February 10, 2006, Defendant moved for judgment as a matter of law or in the alternative for a new trial. Defendant argues the following: Plaintiff did not prove by clear and convincing evidence that (a) Plaintiff justifiably relied on four of Island Mortgage's misrepresentations when it wired monies to Action Abstract, one of Island Mortgage's affiliate companies ("Action Abstract"); (b) Defendant actually knew of Island Mortgage's fraudulent scheme; and (c) Defendant substantially assisted Island Mortgage in perpetrating a fraud. Defendant also challenges the amount of the damages award.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 50 provides that a party can move for judgment as a matter of law at any time prior to the submission of the case to the jury and argue that "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50. The Court may reserve decision on the motion and submit the case to the jury, thus requiring the movant to renew its request after judgment. "In ruling on a renewed motion, the court may: (1) if a verdict was returned: (A) allow the judgment to stand, (B) order a new trial, or (C) direct entry of judgment as a matter of law; or (2) if no verdict was returned; (A) order a new trial, or (B) direct entry of judgment as a matter of law." Fed. R. Civ. P. 50.

On a motion for judgment as a matter of law, "the court must review all of the evidence in the record, cf., e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence, e.g., Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-555, 110 S. Ct. 1331, 108 L. Ed. 2d 504." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 135, 120 S. Ct. 2097, 2102 (2000).

To succeed on a motion for a judgment as a matter of law, the evidence introduced at trial must be "such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." This is Me, Inc. v. Taylor, 157 F.3d 139, 142 (2d Cir. 1998) (alteration in original and internal quotation marks omitted). A movant meets this extremely high burden when "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded" jurors could not have come to the conclusion and rendered the verdict as was rendered. Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks omitted).

## DISCUSSION

At trial, Plaintiff had to prove by clear and convincing evidence that Defendant aided and abetted the fraud Island Mortgage perpetrated on Plaintiff. Under New York law, Plaintiff had to prove that (1) Island Mortgage defrauded Plaintiff, (2) Defendant actually knew of the fraud, (3)and Defendant substantially assisted in advancing the fraud. See Allied Ir. Banks, P.L.C. v. Bank of Am., 03-CV-3748, 2006 U.S. Dist. LEXIS 4270, at *32 (S.D.N.Y. Feb.

2, 2006.)  Defendant essentially argues that Plaintiff did not
prove any of these elements.

I.   AMPLE EVIDENCE SUPPORTS A JURY FINDING THAT PLAINTIFF
     JUSTIFIABLY RELIED ON ISLAND MORTGAGE'S FRAUDULENT
     STATEMENTS.

        Defendant first argues that Plaintiff did not adduce
evidence that it justifiably relied on Island Mortgage's
misrepresentations.   Plaintiff, as a sophisticated mortgage
warehouse lender, should have inquired when faced with certain red
flags.   If Plaintiff had inquired when suspicious circumstances
arose, then it would have discovered the falsity of Island
Mortgage's representations and then would not have entered into the
many transactions that it did with Island Mortgage.   Plaintiff
cannot now take advantage of its own failure to inquire when it
should have.

     A.   Island Mortgage's "Ready To Close" Representations

        At the outset, the Court would like to address the case
of Crigger v. Fahnestock and Co., Inc., 443 F.3d 230 (2d Cir.
2006).  Defendant contends that the Court erred in its instruction
to the jury.  As support, Defendant cites Crigger.  Specifically,
Defendant argues that Crigger required the Court to additionally
charge the jury that a sophisticated plaintiff must inquire before
proceeding when faced with red flags.  (Def.'s Letter 2.)

        This Court disagrees.  The Second Circuit reviews jury

5

instructions "de novo" to determine whether the instructions either misled or inadequately informed the jury about the correct legal standard or controlling law. <u>Crigger</u>, 443 F.3d at 235. "A new trial is required if, considering the instruction as a whole, the cited errors were not harmless, but in fact prejudiced the objecting party." <u>Id.</u>

The Second Circuit explained that "reliance entails a duty to investigate the legitimacy of an investment opportunity where plaintiff was placed on guard or practically faced with the facts." <u>Id.</u> at 234 (internal quotation marks and citations omitted). The <u>Crigger</u> court found that the district court did not "mislead the jury" when it instructed the jury regarding plaintiff's duty to inquire. <u>Id.</u> at 236. At the <u>Crigger</u> trial, the evidence indicated that the investment opportunity at issue was fraudulent and that the plaintiffs were "investors of reasonable means and prudence . . . [who] had a legal duty at least to inquire further--just as the district court charged." <u>Id.</u>

This, however, does not mean that this Court erred because it did not instruct the jury about Plaintiff's duty to inquire. First, such duty is only triggered when a "plaintiff is placed on guard or practically faced with the facts." <u>Id.</u> at 234 (citation omitted).

Second, if the Court did err, the Court finds that such

6

error did not prejudice Defendant.  This Court did not foreclose Defendant from presenting to the jury all the evidence regarding Island Mortgage's "ready to close" misrepresentations.  <u>See</u>, <u>e.g.</u>, Pl.'s Ex. ("PX") 342, 345.  Defendant's exhibits illustrated how Plaintiff knew which Island Mortgage fundings closed and which were returned.  <u>See</u> Def.'s Ex. ("DX") 108, 110, 112, 113A, 115, 117, 119, 120A, 122, 124, 126, 128, 130, 132, 134, 136, 138, 140. Defendant also adduced evidence that more than 50% of all Island Mortgage fundings from November 1999 to June 2000 did not close when Island Mortgage said they were "ready to close." (Def.'s Mem. 6.)  <u>See</u> DX 155.

The jury, unfortunately for Defendant, did not believe it.  Instead, the jury found that Plaintiff justifiably relied on these misrepresentations despite the return wire rates.  Plaintiff presented evidence that it had a long and successful three-year relationship with Island Mortgage before the collapse.  <u>See</u> DX 5. Plaintiff's employees visited Island Mortgage's office before funding.  (Trial Transcript ("Tr.") 1300:16-1301:12.)  Plaintiff also checked Island Mortgage's investor references.  (Tr. 1297:4-1300:15; PTX 178.)  And Plaintiff conducted diligence each time it increased Island Mortgage's warehouse facility.  <u>See</u> DX 11, 15, 47, 49.  Also, other mortgage warehouse lenders of similar skill and sophistication relied on Island Mortgage's misrepresentations.

Lastly, in a criminal prosecution, various Island Mortgage officers admitted under oath that they had defrauded warehouse lenders. Fact Stipulation ¶ 20; <u>see</u> PX 342, 345, 432.

Construing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff presented enough evidence for a reasonable jury to find that Plaintiff justifiably relied on Island Mortgage's "ready to close" misrepresentations.

B. <u>Action Abstract's Independence From Island Mortgage</u>

Island Mortgage's second misrepresentation at issue is the independence of Action Abstract, one of Island Mortgage's affiliate companies. Defendant argues that Plaintiff did not justifiably rely on this misrepresentation because Plaintiff had access to information that indicated Action Abstract was not independent from Island Mortgage. Thus, Plaintiff should have inquired more to reveal the falsity of such misrepresentation. Construing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff's evidence sufficed for a reasonable jury to find that Plaintiff justifiably relied on this misrepresentation.

Action Abstract was the company to which Plaintiff wired monies for its Island Mortgage transactions. Action Abstract needed to be independent from Island Mortgage because the monies might be misused by Island Mortgage. (Tr. 1482:23-1484:7.)

8

On May 3, 1999, Plaintiff downloaded a financial statement for Apponline, Island Mortgage's parent company ("Apponline"). This financial statement indicated that Action Abstract was owned by a director of Apponline. See DX 35. That same day, Plaintiff inquired from Island Mortgage how Action Abstract maintains its independence from Island Mortgage. DX 37. Ed Capuano ("Capuano"), the President of Island Mortgage, replied that "Action Abstract is independently owned and operated by its President Robert Knickman." DX 38. This was false, and a jury found that Plaintiff justifiably relied on this mis-statement.

Defendant claims that the financial statement triggered Plaintiff's duty to inquire as to the independence of Action Abstract from Island Mortgage. However, Plaintiff did inquire. DX 37. Furthermore, the evidence reveals that Plaintiff reviewed various documents to confirm Action Abstract's independence. Plaintiff reviewed a Dun & Bradstreet report that stated Robert Knickman owned 90% of Action Abstract, Plaintiff verified title insurers for whom Action Abstract was an agent, and Plaintiff demanded and received proof that a fidelity bond covered Action Abstract. Another mortgage warehouse lender conducted the same type of diligence. Based on such diligence, Plaintiff believed that Action Abstract was independent. (Tr. 1333-35; 1339-40; Howard Dep. 139:16-140:6, 140:10-141:20, 142:8-142:22, 142:25-

147:21, 254:19-24.) <u>See</u> DX 30, 32.

Defendant argues that Plaintiff's diligence occurred before Plaintiff read the financial statement revealing Action Abstract's true owner. However, Plaintiff could have obtained the documents of such due diligence prior to discovering the financial statement and then later on again reviewed those same documents to confirm what was told to them by Island Mortgage. Defendant fails to show how exactly this makes that much of a difference -- let alone cite any supporting case law for its proposition -- in light of the fact that Plaintiff did inquire and received an answer that seemed to be confirmed by documents it obtained through its own due diligence.

Construing all inferences in favor of Plaintiff, the Court finds that a reasonable jury could have found that Plaintiff justifiably relied on Defendant's mis-statement about Action Abstract's independence, in light of the evidence that was adduced.

C.    <u>Whether The Action Abstract Account Was An Escrow Account</u>

The Court also finds that enough evidence existed for a reasonable jury to conclude Plaintiff justifiably relied on the misrepresentation that the Action Abstract account was an escrow account. Ms. Billye Scott ("Scott"), an employee of Plaintiff, testified that Capuano would refer to the Action Abstract account as an escrow account. Scott stated at trial that she relied on

this characterization of the Action Abstract account. (Tr. 1377:8-20.) However, Defendant argues that Scott contradicted herself during her cross-examination. (Tr. 1560-66.)

Despite Scott's conflicting testimony, the Court still finds that enough evidence existed for a reasonable jury to find that Plaintiff relied on the misrepresentation that the Action Abstract account was an escrow account. A jury is "free to weigh all the testimony, and either to discredit it or to accept a different interpretation of [it] . . . or to credit [it] . . . ." Black v. Finantra Capital, Inc., 418 F.3d 203, 210 (2d Cir. 2005). The province of fact-finding and weighing witness credibility is left to the jury, not this Court or the parties. See Piesco v. Koch, 12 F.3d 332, 345 (2d Cir. 1993); Greenway v. Buffalo Hilton Hotel, 951 F. Supp. 1039, 1050 (W.D.N.Y. 1997).

D.   Paul Skulsky's Involvement With Management Of Island Mortgage

Defendant finally argues that Plaintiff did not justifiably rely upon the misrepresentation regarding Paul Skulsky ("Skulsky") and his involvement with Island Mortgage management. Skulsky, a convicted felon, was involved with Island Mortgage. Had Plaintiff known, it likely would not have done business with Island Mortgage. (Tr. 1349:20-24.) But Capuano had informed Plaintiff that Island Mortgage was not connected with Skulsky. DX 38.

Again, this Court reviews the record for evidence that could support a reasonable juror's finding that Plaintiff justifiably relied on Capuano's misrepresentation about Skulsky. When Plaintiff discovered that Skulsky may be involved with Island Mortgage, Plaintiff acted. It reviewed reports, which did not indicate that Skulsky dealt with Island Mortgage. DX 36. Furthermore, Plaintiff's management personnel questioned Capuano about a Skulsky-Island Mortgage relationship, and Capuano answered them in the negative. DX 37, 38. And Scott testified that had she known that Skulsky was involved with Island Mortgage, Plaintiff would likely not have continued to do business with Island Mortgage. (Tr. 1349:20-24.)

This evidence suffices for a reasonable jury to find that Plaintiff justifiably relied on Island Mortgage's misrepresentations about a Skulsky-Island Mortgage relationship. For the reasons above, the Court DENIES Defendant's motion for a judgment as a matter of law regarding Plaintiff's justifiable reliance.

II.  <u>AMPLE EVIDENCE SUPPORTS THE JURY FINDING THAT STATE BANK ACTUALLY KNEW OF ISLAND MORTGAGE'S FRAUD.</u>

Defendant argues that Plaintiff also failed to adduce clear and convincing evidence that Defendant actually knew of Island Mortgage's fraud. Defendant contends that at best, the

evidence establishes that Defendant constructively knew of Island Mortgage's fraud. Furthermore, Plaintiff did not prove that Defendant knew of Island Mortgage's specific misrepresentations but only of a general fraud.

This Court disagrees. First, Defendant is simply re-arguing the facts and any inferences that may be drawn from them. This motion is not the appropriate time or place for such arguments; fact-finding is left only to the jury. See Piesco, 12 F.3d at 345; Greenway, 951 F. Supp. at 1050.

Second, ample evidence in the record warrants the jury's finding that State Bank actually knew of Island Mortgage's fraud. Defendant had informed its employees to tell payees of Island Mortgage checks that sufficient funds were present even though Island Mortgage's accounts were "in the red." (Tr. 571:18-572:6 Cummings). Defendant also informed its employees via email that if payees of Island Mortgage checks called or requested information, they should be referred back to Island Mortgage. See PX 298, 312. Defendant gave Island Mortgage special treatment: Island Mortgage did not have to "fund their accounts prior to issuing checks, like everyone else." PX 312.

Defendant also knew Island Mortgage did not have enough money for all the checks issued, as shown in Defendant's "Suspicious Activity Reports." PX 333. Defendant knew that Island

13

Mortgage was using money from accounts that were specifically set up only for mortgage closings to pay the companies' operating expenses. (Tr. 300-02 Hennessey). Defendant also knew that Island Mortgage held the Action Abstract account as an escrow account when it was not such an account, and monies that should have gone into an escrow account went into other accounts. (Tr. 190-93, 199, 635:23-636:18.) <u>See</u> PX 31.

The evidence also demonstrates that Defendant did nothing when it researched the backgrounds of the Island Mortgage principals and discovered that Skulsky was a convicted felon and a principal of Island Mortgage. (Tr. 968:6-17, 902:21-903:4.) <u>See</u> PX 190. State Bank did not discuss this with the FDIC. (Merzbacher Dep. 93:9-93:16, 93:24-94:5, 94:14-94:18, 98:9-100:2, 107:17-108:6.)

Accordingly, the Court finds that the record suffices to support a jury finding that State Bank actually knew of the fraud Island Mortgage had perpetrated. The Court DENIES Defendant's motion for judgment as a matter of law on this ground.

III. <u>AMPLE EVIDENCE SUPPORTS THE JURY FINDING THAT THE DEFENDANT SUBSTANTIALLY ASSISTED THE FRAUD.</u>

As for the third element of an aiding and abetting fraud claim, the Court rejects Defendant's arguments regarding a lack of evidence in the record. The evidentiary record amply provides for

a reasonable jury to find that Defendant substantially assisted in the fraud perpetrated by Island Mortgage.

The evidence indicates that the Defendant had given Island Mortgage special treatment in that it was the only customer with a unique funding arrangement where Island Mortgage could use up to $5 million per day. A jury could have concluded that Island Mortgage covered the checks it had written through the substantial assistance of Defendant. Defendant had used a combination of transfers from other accounts into Island Mortgage's operating accounts as well as numerous daily issuances of stop payments to cover the checks Island Mortgage had written. Island Mortgage was Defendant's only customer that was allowed to cover its checks via stop payments. (Tr. 255:24-256:6.) A jury could have reasonably concluded Island Mortgage's fraud would not have continued without this unique funding arrangement.

The Defendant provided this funding arrangement in violation of its own corporate policies. PX 341. Defendant also engaged in the "unusual practice" of referring inquiries regarding the validity of Island Mortgage checks back to Island Mortgage or to even tell inquirers that sufficient funds were present in the Island Mortgage accounts even if untrue. (Tr. 123:1-125:2, 693:1-14.) See PX 312. Notably, the Island Mortgage accounts with Defendant "generated huge fee income." PX 340.

All in all, a jury could have concluded that the services Defendant provided to Island Mortgage were more than normal banking services provided to banking customers and even to Defendant's own customers. Accordingly, the record is replete with evidence for a reasonable jury to conclude that Defendant had substantially assisted Island Mortgage in its fraudulent scheme. On this ground, the Court DENIES Defendant's motion for judgment as a matter of law.

IV.  <u>AMOUNT OF DAMAGES</u>

Defendant next raises issue with the amount of the damages award. The jury had awarded Plaintiff the total amount Plaintiff claimed as out-of-pocket losses: $43,856,746.03. Defendant claims that Plaintiff, if entitled at all to damages, should only receive $7,383,894.41. Defendant argues that this is the amount of damages Plaintiff had as of June 13, 2000. Any funds that Plaintiff wired after June 13, 2000, were unjustified in light of the fact that Plaintiff knew on that date that Island Mortgage was in financial trouble.

Defendant claims that Plaintiff had knowledge of Island Mortgage's fraud and financial trouble. Larry Trevino ("Trevino"), Plaintiff's former president, had reviewed Island Mortgage's financials. He discovered that Island Mortgage "did not have enough cash coming in from their day-to-day operating activities to

meet their day-to-day expenses." (DX 411 at 202:24-208:10, 208:22-209:3.)

Trevino informed other management personnel, and they attempted to contact Capuano. (<u>Id.</u> at 185:21-24.) The next day, Capuano contacted Plaintiff. Plaintiff's management team was not happy with Capuano's explanation of Island Mortgage's financial situation. Plaintiff's management team informed Capuano that it would need to "reflect" on whether it would continue funding Island Mortgage transactions. (<u>Id.</u> at 216:18-22.) At the end of that conversation, Trevino concluded that fundings with Island Mortgage would need to stop. (<u>Id.</u> at 219:4-23.)

While Defendant may have presented this evidence at trial, Plaintiff's evidence contradicted it. Plaintiff cited to Trevino's deposition taken before trial, at which he said that he "had no concern that [Island Mortgage was] running a legitimate business." (Trevino Dep. 181-82.) Plaintiff argues that the testimony Defendant cites above may have been proof that Trevino was concerned about Island Mortgage's financial status but not about any fraudulent scheme. Furthermore, Plaintiff's incoming president, Hunter Battle ("Battle"), did not remember ever being informed about Island Mortgage's financial issues. (Tr. 1119.)

Accordingly, the jury had enough evidence before it to conclude that Island Mortgage's financial troubles did not indicate

a fraud and that Plaintiff's reliance upon Island Mortgage's misrepresentations after June 12, 2000, was still justified. While Defendant strongly argues its evidence, the Court cannot step into the shoes of the jurors and decide which of the parties' evidence is more persuasive. All this Court can do is decide whether enough evidence was presented before a jury for it to reach the conclusion it did. And this jury had ample evidence for all of its conclusions. Accordingly, the Court DENIES Defendant's motion for a judgment as a matter of law in its entirety. The Court finds Defendant's remaining arguments without merit.

V.    <u>MOTION FOR A NEW TRIAL</u>

Pursuant to Rule 59, a new trial can be granted "for any of the reasons for which new trials have heretofore been granted in actions at law." Fed. R. Civ. P. 59. A motion for judgment as a matter of law is to be distinguished from a motion for a new trial, which Defendant brings in the alternative under Rule 59 of the Federal Rules of Civil Procedure.

In contrast to the rigorous standard applicable to a motion for judgment as a matter of law, wherein the court "has no discretion whatever and considers only the question of law whether there is sufficient evidence to raise a jury issue," "[o]n a motion for new trial the court may consider the credibility of witnesses and the weight of the evidence," and "'set aside a verdict

supported by substantial evidence where in [the court's] opinion it is contrary to the clear weight of the evidence, or is based upon evidence which is false.'" 9 Wright et al., § 2531, at 575-76 (quoting <u>Garrison v. United States</u>, 62 F.2d 41, 42 (4th Cir. 1932)).

"As a general matter, a motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." <u>DLC Mgmt. Corp. v. Town of Hyde Park</u>, 163 F.3d 124, 133-34 (2d Cir. 1998.) A district court can grant a motion for a new trial only when the jury's verdict is "egregious." <u>Id.</u> at 134. "A court should rarely disturb a jury's evaluation of a witness's credibility." <u>Id.</u>

Defendant argues that a miscarriage of justice occurred because (1) Plaintiff did not meet its heavy burden of proof, and (2) considering the factual and legal complexities of the case, the jury verdict came back very quickly and thus the jury could not have carefully considered any of the evidence or the jury charge. Defendant also claims that if the evidence truly sufficed against Defendant, the United States would have criminally prosecuted it alongside Island Mortgage. Instead, the United States did not-- nor did the FDIC or the New York State Banking Department. Lastly, Defendant's relationship with Island Mortgage resulted in gross

revenue of $925,000. But the jury award mandates Defendant to pay over $40 million in damages. Such a large award will devastate Defendant, a mid-sized bank in Long Island.

The Court cannot agree. First, the Court discussed all the trial evidence that provided a basis for the jury's verdict. <u>See</u> <u>supra</u> Parts I-IV. Second, a speedy deliberation does not warrant a new trial. <u>See</u> <u>Wilburn v. Eastman Kodak Co.</u>, 180 F.3d 475, 476 (2d Cir. 1999) ("A jury is not required to deliberate for any set length of time. Brief deliberation, by itself, does not show that the jury failed to give full, conscientious, or impartial consideration to the evidence.") Last, neither a large verdict nor the United States' decision not to prosecute Defendant require a finding that the jury's verdict was egregious or a miscarriage of justice. <u>See</u> <u>also</u> <u>Tuf Racing Prods., Inc. v. Amer.</u> <u>Suzuki Racing Corp.</u>, 223 F.3d 585, 591 (7th Cir. 2000) ("if the award is within the bounds of reason, the fact that the jury may not have used reason to arrive at it . . . will not prevent it from being upheld"). Accordingly, the Court DENIES Defendant's motion for a new trial.

## CONCLUSION

For the reasons above, this Court DENIES Defendant's motions for a judgment as a matter of law and for a new trial. The Clerk of the Court is ordered to mark this matter as CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert U.S.D.J.

Dated:    Central Islip, New York
          September 25, 2006